All rise. The Illinois Appellate Court Urgent Vision is now in session. The Honorable Justice Bertina Lampkin is residing. Thank you, sir. Wow. Are you putting all these people in? Yeah. You guys come too, right? Everyone can have a seat. We're selling popcorn. No, we'd have to be giving it away. We've been selling. We're in the morning. I wish there were some more places for you to sit. Can you guys let them have a couple of chairs? Don't you sit there. You let a lady sit there. I saw him about to sit. I'm like, I know he's not. All right. And I see a clerk standing up. Can you get a seat? Are you okay? All right. Good morning, everyone. It will call the first case at this time. And you can call the case where it's first. People versus Rainey. I am with the counsel. Step forward. Give us your name. Speak up loud and clearly. And tell us who you represent. Good morning, your honors. My name is Brooke Winterhalter. I'm from the Office of the State Appellate Defender. And I represent the appellant, Steve Rainey. All right. Good morning, your honors. Assistant State's Attorney, Jenna McMahon, on behalf of the people. All right. It's a very interesting case. And we have all these students here. So I'm going to allow you to take more time if you would like. Normally we give you 15 minutes. We're going to give each side 20 minutes. I would say, I know we've all read the briefs. We've looked at the record. But I'm going to let you say more of it, just because we have students here and I want them to know what the issues are. If you want to reserve some time for rebuttal, just let me know now. I would like to reserve three minutes in rebuttal. Okay. That is fine. And I know that you filed supplemental briefs. And I know that the defense argued forfeiture. And so I want you to argue that to us as well. And I want the state to argue how you get to argue things that you forfeited. And I'm sure it'll be a lively discussion. So I thank you in advance. And I'm really sorry for the students here that don't have seats. All right. And counsel, whenever you're ready to proceed, you certainly can. I will say to the supervisor, they must not like you because somebody gets scooted. They get scooted over and get one more person of it. All right, counsel, you can proceed. Thank you. May it please the court. Counsel, this morning I'd like to focus on issue one of our briefs. I am prepared to answer questions on all of the issues. And I will do, as you said, and address the supplemental briefs. I also want to step back after I introduce the first issue. And I'll give some additional facts in light of the audience. This case is about Mr. Rainey's right to Miranda warnings. He was arrested and interrogated without any warning of his Fifth Amendment right to remain silent and not incriminate himself. The trial court, nonetheless, allowed the state to introduce his inculpatory statement. And this violated the United States Supreme Court's decision in Miranda. And it requires reversal here. So stepping back, this case began on April 18, 2022, with the execution of a search warrant on the south side of Chicago. Eight to ten officers, along with a sergeant and a lieutenant, arrived at the address of the search warrant. And Mr. Rainey was the named target. They were let in by an occupant. They went inside the apartment, announced their office. As Officer Martinez testified at the motion to suppress the trial, they announced Chicago police loudly. They detained everyone inside, including the woman who had let them in. They had her secure a dog. And they put everyone in a common area. To do so, they had to knock on a back bedroom door. They then kicked in the door. There they found Mr. Rainey and his girlfriend. They arrested them. I just want to stop you because I want the students to know that all of the people who were in the apartment, according to the record, you can correct me if I'm wrong, were all searched and handcuffed. And put in the same room together initially. All right. That is correct. So upon arriving, they arrested and searched every person. They put them in a common room. And then Officer Martinez is leaving the search warrant. And he goes back to the bedroom. And then he says he's in and out a few times. And he goes to grab Mr. Rainey. He takes Mr. Rainey, who is in custody. He's in handcuffs. He says Mr. Rainey is not free to leave. Had Mr. Rainey tried to leave, he would not have let him. And he takes Mr. Rainey back to the bedroom. And he asks Mr. Rainey, what am I going to find in here? Well, first he tells Mr. Rainey that they're pursuant to a search warrant. And then he says, what am I going to find in here that should not be here? In response, Mr. Rainey says a gun. This is a custodial interrogation. It meets the reasonable person's asked for custody. There's two issues for custodial interrogation, which require Miranda warnings. First, the defendant must be in custody. Second, there must be an interrogation. Here, Mr. Rainey's in custody. The trial court found he was in custody, that there was no question he was not free to leave at this time. He had been handcuffed, searched, placed in a common area, and then removed from his family and friends and taken back to the bedroom and questioned. He's in custody. There are four adults, but there are eight to 10 police officers. One, according to Officer Martini, all armed, all in bulletproof vests. And according to Officer Martini, one has a rifle. He's taken back. And he's asked, essentially, what contraband is in here? The Supreme Court has said, before doing that, Mr. Rainey must be advised of his right to remain silent and his right to, and that anything he say can and will be used against him, and of his right to an attorney. So I have a question about the circumstances. It appears that it's during the day, but when the officers in the video, it appears that the officers are all having to use flashlights as they proceed upstairs to the apartment. When they get inside the apartment, again, they're using flashlights. There's people coming out from different directions in the living room area because they have curtains up. So it's kind of hard to tell what's behind the curtains, but people are coming out. And then they go into the room where Mr. Rainey is in the defendant. And then that's also dark as well. The officers have to use flashlights. And given the fact that Officer Martinez, at least based on the briefs, knows that he's a convicted felon with regards to drug and firearms offense, why doesn't the public safety exception under the trial court dismiss it? But why doesn't it apply under those circumstances? Because they're entering an area where, number one, it's dark. It's very dimly lit. And then also, they don't know exactly who they're dealing with as they're walking in. And so two points on the public safety exception. First, Officer Martinez himself testified that he ensured safety was accomplished first. He first went through and secured every person in the apartment, placed them away from the room he was about to search. And then he went back to the room. And then he looks around. And then he takes Steve Rainey back. So safety has already been accomplished. There's no emergent necessity to question someone. And then second, Quarles, the public safety exception case, is specifically about the public. And in that case, there was someone who was alleged to have committed a rape act. And there was a gun strewn in a supermarket. So there was a true concern that the public was at risk. It was a place of public accommodation. And they didn't know where the weapon had been. Here, with a secure apartment, armed officers, no one is within reach of anything in the bedroom aside from the officer and detained Mr. Rainey. There's no emergent necessity here. And the trial court looked at these facts and said there was no public safety issue. What he said was that if this was the case, every case would be a public safety case. That is correct. And Quarles intended for this to be a limited and narrow exception when the public is truly at risk. So... Counsel, let me interrupt you. You've spoken for a moment about the fact that Mr. Rainey was in custody. State argues that point. I wanted you to distinguish why Mr. Rainey was in custody as opposed to being detained the way cases have indicated detentions take place when these sorts of warrants are executed. Yes, two things. First, a number of the cases cited by the state are actually under the Fourth Amendment case law, which is determining... Most of those cases, in fact, recognize there's a seizure, there's a detention, but the question is whether it's reasonable and short. Like, could Terry stop? And then... So there is a distinction between what in custody is for the Fifth and the Fourth Amendments. But more specifically here and in the Fifth Amendment cases, the question is whether a reasonable person would have felt not at liberty to terminate the interrogation at least. And in some of the other cases that do touch on the Fifth Amendment, like Fischetti, for example, the warrant is executed, but the person questioned is with their family. They are not handcuffed. Nobody's handcuffed, in fact. The warrant is being executed and the person is not removed to a separate bedroom and questioned, which is what happened here. It is also what happened in the case of Fort, which we rely on. This court found a Fifth Amendment violation because the woman was removed and supervised by police officers who all questioned. And so specifically here, he's handcuffed, he's searched, and then removed from his family and friends. It's a badly informed and sufficient to show he's in custody. And then the question here is specifically asking for contraband. It's not an ordinary, what's your name? What's your date of birth? It's what is here that should not be here. And Officer Martinez himself says he's essentially giving the defendant an opportunity to confess. What he says is, when you ask, why did you ask him this? Officer Martinez says, the client of the warrant, I give the person the opportunity to see if there's anything in the apartment before we start our systematic search. So he's giving them an opportunity to say there's contraband there. And that is precisely what an interrogation is. Whether it's reasonably likely to elicit an incriminating response, according to the U.S. Supreme Court and Rhode Island DNS. So this question is an interrogation. Mr. Rainey was in custody. More random warnings were required. So I have a question. Did Mr. Rainey say he was handcuffed when he was in the bedroom? Because in the tape, it's not clear whether or not he's handcuffed or not. Mr. Rainey never testified at the motion to suppress or at trial. The only testimony is Officer Martinez. And what he says is that everyone was handcuffed and detained. And then he says he summoned Mr. Rainey to the bedroom. There's no testimony that the handcuffs were taken off of him. But I agree the video is not clear. And that's the record we have. And so the question becomes, was this error harmless? And we would submit, first of all, it was not harmless, as we argued in our opening brief and our reply brief. This was a necessary element of the charge. Here, Mr. Rainey is charged with possession, unconventional criminal, possessing the gun and having two qualifying offenses. The qualifying offenses were not at issue in trial. They were stipulated to. So the question is, did he have possession of this handgun? And the handgun is found in a bedroom. That is clearly a disaster. The officer testified he lifted up a mattress, a box spring, and milk crates before finding a zipped bag underneath. And as this court knows, to prove possession, it can be actual or constructive. It was not on Mr. Rainey. To prove constructive possession, they needed knowledge to show Mr. Rainey the knowledge of the gun and control. His knowledge was at issue in this case. And the linchpin of their knowledge is his statement, there's a gun in here. And that can't be harmless. There's multiple cases that say confessions are rarely harmless. But in this case, it was a necessary element of the crime. And the crux of the state's argument at trial was he admitted to the gun's presence. We have his knowledge. There's also a case, let us say, where counsel could have made a colorable argument for innocence. And here, there's a colorable argument. He was found in the room with a woman. The gun's in the zipped bag. There's a colorable argument. It was hers. It was someone else's in the apartment. He didn't know about it. It's zipped. There's no fingerprints. There's no DNA. There was an opportunity for him to argue. He didn't have knowledge of this gun and he should be found not guilty. Any other questions? I have a question regarding the ammunition. Considering that the majority of the armaments that were found didn't match the weapon, why is it relevant? Why is the armaments relevant here, the ammunition? We agree that the ammunition, frankly, was not relevant for anything other than its propensity purpose, which is very improper. And by propensity purpose, I mean to argue that he had ammunition, he had all these, he had this other stuff, therefore, he must have known of this gun. And that's an improper purpose to introduce evidence, particularly here where it's evidence of a different crime, possession of ammunition, that he was not charged with. And the ammunition should not have been introduced at trial. And the trial court erred by allowing the state to introduce irrelevant ammunition. Your fourth objection? Yes. Sorry, Your Honor. And with respect to harmless air, because this is something that the state bears the burden of proving that an air, particularly a Miranda air, is harmless beyond a reasonable doubt, it was something they should have argued in their response brief. Here, they did not. And in fact, we included it and addressed it in our opening brief. And frankly, when we wrote our reply, we thought they agreed this couldn't possibly be harmless. It's his admission. And by not addressing it in their briefs, they forfeited the right to raise it now. Rule 23, the Illinois Supreme, sorry, the rules expressly say that points not argued in their briefs are forfeited. And so we would argue they have no basis to argue it now. If there are no other questions, there's because Mr. Rainey's inculpatory statement was given in response to a custodial interrogation without any warning of his rights under the Fifth Amendment, as required by Miranda, and because that statement was truly the linchpin of the state's attempt to prove a necessary element of the crime charged here, his conviction should be reversed and his case remanded for a new trial without his incriminating statement as set forth in Issue 1 and also without the use of irrelevant ammunition as set forth in Issue 2. Thank you. I do want you to address, I'm thinking based upon what I assume will be the applicant's argument, to be prepared to argue in rebuttal whether or not you think there is sufficient evidence to retry him at all. Yes, Your Honor. In counseling, we step forward. For the students, are you understanding what, did you read the briefs beforehand? And anybody? Most people are shaking. Yeah, most people, the overwhelming majority are shaking their head no. So for the couple that I see who are shaking their head, yes. We're going to talk to all of you just for a few minutes afterwards, not about our ruling, but we just want to find out what you think about the case. And counsel, I'm sorry to delay. Good morning, Your Honors. Counsel, Assistant State's Attorney, Jenna McMahon, on behalf of the people. May it please the Court. The trial court properly denied defendant's motion to disperse statements, and this Court should affirm because random warnings were not required here because defendant was neither in custody nor subjected to an interrogation when he made the statement about the firearm. The circumstances surrounding Officer Martinez's questioning show that this was not a custodial situation. As Your Honors are aware, there are multiple factors the Court will look at when considering when someone is in a custodial situation. Beginning with the first factor, the location, time, length, mood, and mode of the questioning, Officer Martinez and defendant's exchange took place in defendant's bedroom, and their exchange was cordial, relaxed, and non-confrontational. Officer Martinez was not aggressive. He did not raise his voice, and the defendant appeared to be cool, calm, and collected by evidence of body camera footage. Additionally, their exchange was very brief. It lasted just a few minutes. As to the second factor, the number of officers present, while there were 8 to 10 officers present, Officer Martinez was the only officer present at the time that the defendant made the statement. As to the third factor, the presence or absence of family and friends, defendant's girlfriend and two other companions were present. However, they were not present during the conversation, but they were in the other room. As to the fourth factor, the indicia of formal arrest, other than being handcuffed, there was no other indicia that defendant was being formally arrested. Defendant was not booked, fingerprinted, and Officer Martinez did not have his weapon drawn when they were having their conversation. Was he deprived of his ability to walk around freely? He was temporarily detained. But, and he was not free to leave the apartment. So this is kind of just like this same idea that when someone is temporarily detained pursuant to a Terry stop, they're not in custody for purposes of Miranda. The same would apply here. Even though the search warrant was for him? So he was not free to leave, but he was free to leave the conversation and go back to the common area. So, so actually, I just want to make sure I understand. So police officers arrived. Is Mr. Rainey in the bedroom when they first arrived? Or is he outside with everybody else in the living area? When they first arrived, the officers, he was in the, he was in the bedroom. He was in the bedroom. And the officers had to make forced entry. They then brought the defendant, his girlfriend to the common area with the other two individuals. And, and everybody was detained. They were all treated the same. Then they singled him out and take him back into the bedroom. Then officer Martinez requested to have a conversation with the defendant in his bedroom. And the defendant willingly did. Which doesn't that create at least an impression that he's being detained? And it's, it's not just a conversation, but actually he's, he doesn't have the ability or the, the will to be able to leave the room. So temporary detainment during a search warrant is not typically considered to be in custody as an other indicia of custody. So based on the totality of the circumstances here, we would say that, no, that's not, he would not think he's custody just for that reason. And this court is, no single factor is dispositive. And the court should consider all of the circumstances in this case. Let me ask you this counsel, before you go on, in the circumstances that you've spoken about, when an individual is detained during the course of a search warrant, typically if there is such a thing, you'll see people put into a room. In this particular instance, or put someplace where they're all, they can be watched together. But in this particular instance, while that occurred at first, at some point officer Martinez took Mr. Rainey to another room and questioned him. Would you still consider that to be a detention or a temporary detention? Or would that be him not free to leave? So in other words, your earlier statement about him being in the room and being asked the question, you contend that if he did not wish to answer the officer's questions, he simply could have left the bedroom and returned to the common area with the other individuals? Yes, there's nothing in the record to suggest otherwise. And in the record, the officer, officer Martinez testified that he requested to have a conversation with the defendant in the defendant's bedroom. He didn't, there's no evidence of him demanding or having his gun out and being like, come to this bedroom. It was, the testimony is that he requested, which I believe makes a difference. And also the fact that he was, he took him out like away from the common area where a bunch of armed officers were watching the others. It really made it less of a custodial situation. I think one could argue if you separate the person from their familiar family and take them to a place by themselves and then tell them the search warrant is for you and you're the subject of the search warrant, that that gives a distinction. The conversation was just not, let's go into another room and I'd like to ask you some questions. If I'm correct, they told him you're the subject of this, the search warrant. And basically, you're the person that we're trying to get something to arrest you on. So he was brought back to the comfort of his bedroom. And his own lawyer described it as a hoarder's nightmare. I don't know how comfortable it is. And if you look at the tapes, it is a hoarder's nightmare. I know. It looks like something the cat dragged in, which no pun intended. And then as to the sixth factor, the age, intelligence, and mental makeup of the defendant, the defendant was 43 years old. He has four felony convictions in his background. And he was on supervised release for a 2004 federal drug conspiracy case. Based on the defendant's maturity, prior experience with law enforcement, coupled with his composure during his exchange with Officer Martinez, this court can draw an inference that the defendant understood that he was not in custody. So let me ask you this, we've already kind of gone over this a little bit, but the fact that Martinez asks Rainey to go into the bedroom, all right, how is that not akin to like Madden or Hanna, People v. Hanna, where all the officer does is grab the defendant's arm and keeps him from going down to the basement where there's some drugs. I mean, the court there found that that was a detention. And people... I believe it's... So the distinction with People v. Hanna v. Here is that the gun was found before the officers asked any questions, which that's not the case here. They phoned, they asked a question and then the gun was recovered. Also in People v. Hanna, when the officer was questioning the defendant, the defendant was surrounded by a bunch of armed officers, which is something that the court pointed out. And then I'm not sure if you're... Are you also referring to People v. Fort? It was... Okay, okay. But based on the totality of the circumstances here, a reasonable person in defendant's position would have understood that they were free to terminate the questioning and walk back to the common area. And then what about the public safety exception? Defendant here argues that it's not applicable, that there was no issue about public safety. So we did argue that in our brief as an alternative argument, but our position is that the defendant was not in a custodial interrogation. Officer Martinez's question did not amount to an interrogation. When Officer Martinez asked the defendant, what am I going to find that should not be here? They were standing in defendant's cluttered, disorganized and unsanitary bedroom. This was a general question concerning the conditions of the room. There were so many obstacles that it was impossible for the officers to fully observe and assess the situation. There could have been needles, sharp objects, broken glass, pest or rodent problems, hazardous materials buried in that room. This was not a systematic, in-depth questioning managed with psychological skills. It was a general question concerning the conditions of defendant's chaotic room. And definitely did not rise to interrogation. Counsel, let me ask you this though. Officer Martinez, after asking Mr. Rainey about a gun, also mentioned drugs. Now consider he had a warrant for drugs, but nonetheless, the scene was secure. I would take it Officer Martinez certainly said it was secure when he was questioned by defense counsel. But it seems to me that to ask him about the drugs may have taken it beyond simply security, looking for needles or something that might harm him. And to that, you say what? So the officer did testify to having a conversation about drugs. But there really isn't nothing else in the record regarding the drugs. The defendant was never charged with the drugs. And I'm not exactly sure when that conversation took place. So. So going back to the statement again, how can it be considered harmless when there's actually the evidence pertaining to his possession of the weapons is relatively thin? I mean, he didn't have it on him. He never really mentioned that it was his gun. He just said the gun. So how can it be considered harmless? Because even without the defendant's statement, there was sufficient other evidence to convict defendant of armed habitual criminal. We do have defendant's presence in the room, along with his proximity to the gun, his refusal to open the door, the proof of residency, which was a hospital bill, bearing his alias, which he admitted was his alias. And I believe the address was, it was a little bit blurry, but it was like February 2022. So he had been living there for a couple of months at very least. And we have the stipulation of the two prior qualifying felony offenses. So our position is that there was sufficient other evidence to support his conviction of armed habitual criminal. And is that your forfeited argument? Yes, it is. Okay, then. Tell me why we should consider your forfeited argument. Forfeiture does not preclude this court from considering the issue. Forfeiture is only binds the parties, not the reviewing court. Also, because this review is de novo, the court can't affirm on any basis supported by the record. So we would be asking. Then argue to me, what is your overwhelming evidence of his possession of this weapon, if we take out his statement? And everybody keeps saying statement, but he made two or three statements. He said, the gun, I don't know where it is in here, but it is here, basically.  So that's all of the statements that he made all the same, seemed like incriminate him. And the questions that are asked of him seem to be questions that would get him to elicit incriminating statements. So I want to know, if the statement is out, what is the evidence? Actually, I want to know if there's enough. You think there's evidence that he is sufficient to convict him that we shouldn't just outright reverse this conviction? Yes, so the fact the defendant was present in the room, along with the fact that he was refusing to open the door, which would show that he was aware of the fact that he had a gun in there that he was not supposed to have. So that's in dishow of awareness and control. Along with his proximity to the gun, I mean, it's underneath his bed. And the proof of residency, which again was the hospital bill that bared his address, which is the same address as the targeted search warrant address, which also showed that he had been living there for a couple of months. And then if you're viewing the photo or the body camera footage, I mean, it appears to be a male's room and there's a lot more male products in there. And there's a bunch of male shoes underneath the bed. So it would be reasonable. It would support a reasonable inference of his knowledge and control over the firearm. I mean, the gun was next to a bunch of men's shoes and underneath the bed that, you know, our position was his bed. But you have to admit that even though he claimed that it was under the bed, it took the officers a considerable amount of time to find it because it wasn't just the gun itself naked out there. It was, I think, in a backpack or somewhere. Fanny pack. Yes, it was in a fanny pack underneath the bed. But, you know, our position is that it would, it was a fact finder could reasonably find that the defendant knowingly possessed the firearm. And I know we're asking a lot of questions, but what about the ammo? The ammunition. So moving on to the second issue. The trial court did not abuse its discretion when it determined the ammunition was relevant and admissible. And that's because the ammunition was relevant here to show the circumstances surrounding the search warrant and the defendant's arrest. The officers had to make forced entry into the defendant's bedroom where they discovered an array of ammunition scattered throughout this small room, which was all in close proximity to the defendant. The loaded handgun and the proof of residency. Specifically, as officers began their search of the bed, they immediately discovered ammunition atop the bed. Upon removal of the mattress, they discovered ammunition on the box frame. And then when they lifted the box frame, they discovered the firearm. Also, ammunition was discovered on the windowsill near the bed, which was the same caliber. And the proof of residency was discovered alongside numerous rounds of ammunition in a bag near the bed. The ammunition was so intertwined with the discovery of the firearm that excluding it from the body camera footage, officer's testimony, or photos would have distorted the facts, presented an incomplete and inaccurate version of the incident, and potentially mislead the jury. Especially since the integrity of the search was raised at trial, the defendant claimed that the firearm was staged. Also, I don't know how you exclude the ammunition from the body camera footage without excluding the entire search of the firearm. Also, a full account of the officer's testimony was relevant for the juror's assessment of the officer's ability to observe the facts and the circumstances surrounding the arrest. Therefore, the trial could not abuse its discretion by allowing ammunition where it was intertwined with the discovery of the firearm and important to a full explanation of the facts of the case. However, if this were... I was gonna say, and if it was... Yes, and if it's clarifying that there was error, we would argue that it was harmless error. The ammunition did not prove any element of the crime. Therefore, the error in admitting the ammunition did not contribute to the finding of guilt and is harmless. The ammunition was merely introduced incidental to the search warrant. It was not introduced to show defendant's propensity to commit a firearms crime. The people never argued that defendant was guilty of armed habitual criminal because of the ammunition. The ammunition was only mentioned to give context to the search warrant. Further, the defense counsel briefly pointed out in closing argument that defendant was not charged with ammunition. And as I argued in the first issue already that there was sufficient other evidence to convict defendant beyond a reasonable doubt here. And then as for the... I also like to point out... As for prejudice, I also would like to point out that the defendant, he did not make any objections to the ammunition evidence. He didn't object to the introduction of it, the publishing of it, or the admission of it. And that includes the photos, the body camera footage, and the physical ammunition. Did you raise that as a waiver argument or forfeiture? I can't remember. No, no, no, I did not. So they, I do not believe they forfeited because they didn't make an oral motion eliminating. And they did include it in their post-trial motion. However... No, no, I said, did you in your brief raise the issue of the waiver counsel for not objecting to the admission? No. Okay. But I wanted to point it out because you're saying that this is, you know, was offered for proof of other crimes and it really wasn't. It was merely introduced incidental to the search warrant. And the fact that defense counsel never objects kind of helps that argument. And then even when the trial court directly asked the defendant if he had any objections, the defendant says no. The defense counsel says no. He also did not ask for a limiting instruction or for the photos or body camera footages to be edited. That being said, given the strength... Oh, defense counsel... Appellate defense counsel does make an argument that it was prejudicial because the jury believed the defendant owned many guns in the brief. So I'll just touch on that really quickly. That is purely speculation and does not constitute as prejudice. Therefore, given the strength of our case and the lack of anything in the record suggesting prejudice, this court should find that even if the trial court admitted the ammunition evidence in error, it was harmless. Turning to the third issue. Briefly. I'm talking about sentencing. Oh, yes. Just go ahead. I don't agree. If you need, you don't need. Okay. I did have... Just because when you first started, and we talked about the public safety exception, you've kind of indicated that you were not going to address it. Are you withdrawing that argument? Are you asking us to still consider the public? Oh, we would... I understand that you agree with that. Yes. For those reasons and those stated in our brief, we would ask this honorable court to affirm. Thank you.  Pending questions. I think I have three points, Your Honors. First, this was a custodial interrogation. Your Honor mentioned Hannah, and Hannah actually suggested in addition of formal arrests include a display of weapons by the police and physical restraint of the defendant in handcuffs. And there it found those things that occurred during the execution of a warrant were initial formal arrest and suggested there was a detention requiring Miranda warnings. The same is true here. There were multiple officers, they displayed weapons, and he was physically restrained. Further, when he comes back to the bedroom, Officer Martinez actually testified that he summoned Steve Ramey to the bedroom. He was not given the option. He was summoned. And with respect to whether this is an interrogation versus a general question, the analysis is, is it likely to elicit an incriminating response? How do we warrant this? Your name is on it. What's in here that should not be here? They're asking for contraband. It's likely to elicit an incriminating response. And when counsel says it's a general question asking what's in the bedroom, I think they're about needles I think they're trying to fit in the public safety exception there. But Officer Martinez testified that public safety has been accomplished here. The apartment is secure. He's already looking around in the room and then he brings him back to question him. This is a custodial interrogation. Miranda warnings were required. And for that reason, we ask that this court reverse his conviction and find that his statement should have been suppressed. Secondly, with respect to the ammunition, it really doesn't go to the story or the circumstances of this investigation. First of all, the bodywork camera was cut dramatically to exclude any mention of the cocaine. They could have also excluded the ammunition. And there's nothing to tie. Although the counsel mentions the backpack, Officer Brackett was the inventorying officer. And he actually, there's no testimony at trial that the proof of residence was found in the backpack. It's that Martinez brought the proof of residence to Brackett and Brackett photographed it. So we have nothing tying the proof of residence, aside from the presence in the bedroom, the proof of residence to the ammunition or the gun. And so the ammunition really was only introduced for a propensity purpose. There's no true relevancy to this precise gun. And on this record, there's no introduction of the caliber of the gun. No one testifies to it. Yeah, that was a question I had. There's no testimony. There's no testimony. The gun is in evidence. But it doesn't go back to the jury. No one brought the gun or the ammunition back to the jury unless the jury requested. That was the trial court's ruling, which I think makes sense. You never want to load a gun. You can't load ammo in a gun. And finally, Your Honor asked, what happens if the statement is excluded? Is the evidence here sufficient to uphold his conviction? We would argue that no. Under this court's decision, and Fernandez cited in our supplemental briefing, no person could find beyond a reasonable doubt on this record, given the condition of this bedroom, that Steve Rainey had no ink possession of a gun in a zipped fanny pack when he's in a bedroom with someone else, and in a house with four other people. And it's very unclear that this is a true sanctioned residence of any sort, or how long he had been in that bedroom, or for what purpose he was in there with his girlfriend. So given the evidence the state presented at trial, absent his statement, admitting to the gun's presence, we would argue there is insufficient evidence to prove his knowledge. You don't think with the mail, with the alias that he used before addressed there, that that mail being found wouldn't, doesn't tie him to that bedroom? I think the mail with that address ties him to that residence. But there's four adults in the bedroom, in the apartment, and there's no indication of who owns this fanny pack, or who placed it there, frankly, given how much stuff was removed before it's located. And for these reasons, we would ask that this court, hold the trial court air to not suppress it, that Mr. Rainey's statement should have been suppressed, and absent that evidence at trial, it was insufficient to uphold his conviction, we'd ask you to reverse. Thank you. Thank you. Thank you. No, no. Okay. All right. Is that a clerk over there? Yes. I can't see her. Hi, okay. Hi. Good to see you. All right. So, first to the lawyers, wonderful presentations. Clearly, both of you were prepared. I'm pleased, I think, both of my colleagues are pleased that you know your cases up and down, and inside and out. Wonderful, wonderful arguments. And at this time, we're going to stand adjourned, and you will have a decision shortly.